# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **STEPHANIE AMOS,** as Daughter, Next Legal Friend, and Lawful Guardian of **PATRICIA ANN HARRIS,** An Incapacitated Person, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )  Civil Action Number<br>)  **2:18-cv-0217-AKK** |
| v. | ) |
| **NORTH HILL NURSING AND REHABILITATION CENTER, LLC, et al.,** | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Stephanie Amos filed this lawsuit against North Hill Nursing and Rehabilitation Center, LLC and various other related entities, asserting claims of negligence, wantonness, and breach of contract on behalf of her mother, Patricia Ann Harris, an incapacitated person. Based on an admission agreement signed by Ms. Amos as Ms. Harris' authorized representative in which Ms. Harris agreed to submit all claims to arbitration, North Hill filed a motion to compel arbitration and to stay pursuant to the Federal Arbitration Act (hereinafter "FAA"), 9 U.S.C. §§ 2 and 3, or to dismiss this action without prejudice. Doc. 5. At issue here is whether Ms. Amos, who did not

1

have legal guardianship over her mother at the time, had the requisite legal authority to bind her mother to an arbitration agreement. After consideration of the parties' briefs, docs. 6, 8, 9, and 10, the record, and applicable law, the court concludes that North Hill's motion is due to be denied.

I.   **STANDARD OF REVIEW**

When presented with a motion to compel arbitration, "a district court, rather than a panel of arbitrators, must decide whether a challenged agreement to arbitrate is enforceable against the parties in question." *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (citing *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)). The party opposing a motion to compel arbitration must "'substantiate the denial of the contract with enough evidence to make the denial colorable.'" *Magnolia Capital Advisors, Inc.*, 272 Fed. App'x at 785 (quoting *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814, 819 (11th Cir. 1993)) (alteration in original omitted). In other words, the opposing party must "present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question," to create an issue regarding the enforceability of the purported arbitration agreement. *See Campbell v. CitiFinancial Mortgage Co., Inc.*, No. CV-06-BE-0302-E, 2006 WL 8436895, at *1 (N.D. Ala. June 2, 2006) (citing *Kenworth of Birmingham, Inc. v. Langley,* 828 So. 2d 288, 290 (Ala. 2002)). As with

the inferences in ruling on a motion for summary judgment, the district court should draw all reasonable inferences in favor of the nonmovant. *See Magnolia Cap. Advisors, Inc.*, 272 F. App'x at 786. If the opposing party has not requested a jury trial, "the court shall hear and determine such issue," pursuant to the FAA, 9 U.S.C. § 4.

The Eleventh Circuit applies a summary judgment standard when considering a motion to compel arbitration. The court will decide, as a matter of law, whether the parties entered into an arbitration agreement only if "'there is no genuine dispute as to any material' fact concerning the formation of such an agreement." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). A dispute is considered genuine if it is supported by the evidence presented or is created by evidence that is significantly probative. *See id.* at 1333 (citing *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014)).

## II.     FACTS

North Hill operates a nursing home and rehabilitation facility. *See* doc. 1-1 at 9. In April 2015, Ms. Amos took her mother Ms. Harris to North Hill and had her admitted. *See* doc. 10-1 at 3. At the time, Ms. Harris was under the protective services of the Mobile County Department of Human Resources due to severe cognitive issues associated with dementia. *See id.* As part of the admission, Ms. Amos signed the

3

relevant paperwork, which included an Arbitration Agreement and Jury Trial Waiver, as her mother's authorized representative. Doc. 6-2 at 5, 20, 24–28. North Hill defines an authorized representative as "the person who has authority to execute this agreement for and on behalf of the resident and who agrees to be responsible to assist the resident in meeting his/her obligations under this Agreement." *Id*. at 5.

Three years after she admitted her mother to North Hill, Ms. Amos obtained Temporary Letters of Guardianship in the matter of the estate of her mother. *See* doc. 10-2 at 2. Ms. Amos subsequently filed this lawsuit in the Circuit Court of Jefferson County, Alabama on behalf of her mother, alleging negligence, wantonness, and medical malpractice against North Hill. *See* doc. 1-1. Defendants removed this action pursuant to 28 U.S.C. § 1441 *et seq.*, and now seek to stay or dismiss the case pending arbitration of the claims.

### III.  ANALYSIS

The FAA establishes that a contract involving interstate commerce that includes an arbitration provision is valid and enforceable. *See* 9 U.S.C. § 2. In the Eleventh Circuit, determining the validity of any particular arbitration agreement "is generally a matter of state law." *See Entrekin v. Internal Medicine Associates of Dothan, P.A.*, 689 F.3d 1248, 1251 (11th Cir. 2012) (quoting *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 681 (2010)). Under Alabama law, North Hill bears the burden

of establishing that a valid arbitration provision exists and that it applies to the claims alleged here. *See Kenworth of Birmingham*, 828 So. 2d at 290.

To support its contention that this lawsuit is subject to arbitration, North Hill argues that courts "have routinely compelled arbitration of disputes between skilled nursing facilities and residents where contracts at issue were signed by either the resident or the resident's representative." Doc. 6 at 6. While the court accepts that, generally, the signature of an authorized representative is sufficient to bind a third-party to an arbitration agreement, Alabama law provides a separate standard for nursing home residents who are mentally incompetent. More specifically, "[c]hildren and the mentally incompetent have traditionally been treated differently under the law than the standard competent adult." *Diversicare Leasing Corp. v. Hubbard*, 189 So. 3d 24, 35 (Ala. 2015) (citing *Ex parte E.R.G.*, 73 So. 3d 634, 678 (Ala. 2011) (Main, J., dissenting)). Therefore, because it is undisputed that Ms. Harris was mentally incapacitated when she entered North Hill, *see* doc. 10-1 at 3, the validity of the arbitration agreement turns on whether Ms. Amos had sufficient legal authority to bind Ms. Harris.

    A.    *Whether Ms. Amos Had the Legal Authority to Bind Ms. Harris to an Arbitration Agreement*

Generally, Alabama courts follow the principle that "a nonsignatory to an arbitration agreement cannot be forced to arbitrate her claims." *Cook's Pest Control,*

5

*Inc. v. Boykin*, 807 So. 2d 524, 526 (Ala.2001). Therefore, to enforce the agreement, North Hill must prove that Ms. Amos had the authority to bind Ms. Harris. In that respect, North Hill principally relies on *Owens v. Coosa Valley Healthcare, Inc.*, 890 So. 2d 983 (Ala. 2004), a case involving a daughter who signed the arbitration agreement as her mother's legal guardian and sponsor. The *Owens* court found that the nonsignatory patient was "clearly designated on the signature page" of the arbitration agreement and upheld the arbitration clause between the nursing home and the nonsignatory resident. *Id.* at 987.

Here, however, Ms. Amos signed the North Hill documents as an authorized representative and left the space for "Resident" unsigned. *See* doc. 6-2 at 20. Unlike a legal guardian, the duties of an authorized representative primarily relate to financial obligations in the event of nonpayment of the resident's fees. *See id.* at 5–6. As such, when Ms. Amos executed the admission documents, she effectively did so as Ms. Harris' responsible party rather than as a legal guardian. Under those circumstances, the Supreme Court of Alabama has held that signing as the responsible party on a nursing-home arbitration agreement was ineffective to bind the resident to the agreement. *Noland Health Services, Inc. v. Wright*, 971 So. 2d 681, 686 (Ala. 2007).

Moreover, Ms. Amos lacked the legal authority to bind Ms. Harris. North Hill does not dispute that, at the time of admission, Ms. Harris was under the protective

services of Mobile County Department of Human Resources. There is nothing in the record that indicates that Ms. Amos had a durable power of attorney when she executed the admission records as Ms. Harris' authorized representative. In fact, the admission documents recognize implicitly that the authorized representative may, in fact, not be the power of attorney or Guardian: "the Authorized Representative confirm[s] and warrant[s] that they have provided the Facility with a complete list of the Resident's current Agents, and copies of all attorneys in fact (Powers of Attorney), if any, Guardianship Commissions or other documents, if any . . . ." Doc. 6-2 at 6. In other words, the 'if any' language implies that North Hill recognizes that an authorized representative may not have legal guardianship or a durable power of attorney over the patient. Therefore, the reliance on the authorized representative language to argue that Ms. Amos had legal authority to bind her mother is unavailing.

> B. *Whether Ms. Amos has provided Evidence of Ms. Harris' Mental Incompetence at the time of her Admission to North Hill*

Ms. Amos argues also that Ms. Harris' documented mental incompetence precludes her from having the capacity to grant Ms. Amos the right to act on her behalf. It is undisputed that Ms. Harris was mentally incompetent at the time of her admission. As such, she is "unable to empower an agent, whether passively or through affirmative acts." *SSC Montgomery Cedar Crest Operating Co., LLC v. Bolding*, 130 So. 3d 1194, 1199 (Ala. 2013) (citation omitted). North Hill seeks to get

around this fact by arguing apparent authority, i.e. that Ms. Amos "represented she had the authority to bind their respective parties . . . to this Agreement." Doc. 6 at 4. Apparent authority requires, however, the capacity to consent by the principal – in this case Ms. Harris: "[a]pparent authority is implied where the principal passively permits the agent to appear to a third person to have the authority to act on [her] behalf." *Treadwell Ford, Inc. v. Courtesy Auto Brokers, Inc.*, 426 So. 2d 859, 861 (Ala.Civ.App. 1983). North Hill cannot make this showing because, at the time of her admission, Ms. Harris lacked the capacity to authorize Ms. Amos to act on her behalf.. *See, e.g.*, *Noland,* 971 So. 2d at 687 (plurality held that a mentally incompetent nursing home resident could not authorize anyone to contract on his behalf).

North Hill's reliance on *Carraway v. Beverly Enters. Alabama, Inc.*, where the Court upheld an arbitration agreement because there was no evidence that the resident objected to her brother admitting her to a nursing home, 978 So. 2d 27 (Ala. 2007), is misplaced. Here, Ms. Harris was, and remains, unable to affirmatively or passively approve of Ms. Amos' assent to an arbitration agreement on her behalf. Under Alabama law, only the court has the power to enter into contracts on behalf of an incapacitated person. *See* Ala. Code (1975) § 26-2A-136(b)(3).

Similarly, *Entrekin* is also of no help to North Hill. The nursing home patient in *Entrekin* signed the agreement and was mentally sound at the time of admission.

8

*See* 689 F.3d at 1249. In contrast, where, as here, a patient is mentally incompetent, Alabama courts have repeatedly held that one who signs as the next friend is "'wholly without authority to make any contract that would bind [the resident] or her estate.'" *Diversicare Leasing Corp.*, 189 So. 3d at 35 (quoting *Noland Health Servs.*, 971 So. 2d at 686). Put differently, a nursing home resident with mental impairments cannot be compelled to arbitrate based on an agreement signed on her behalf by an unauthorized third party. *See id.* at 37. *See also Bolding*, 130 So. 3d at 1199; *Noland*, 971 So. 2d at 690.

## IV. CONCLUSION

By signing as the authorized representative, Ms. Amos merely acted as Ms. Harris' responsible party, which is insufficient under Alabama law to bind Ms. Harris to an arbitration agreement. As such, the arbitration agreement between North Hill and Ms. Harris is invalid as a matter of law. Accordingly, the Motion to Compel Arbitration, doc. 5, is **DENIED**.

**DONE** this 10th day of October, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

9